956 F.2d 271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny NICHOLS, Defendant-Appellant.
 No. 91-5467.
 United States Court of Appeals, Sixth Circuit.
 March 9, 1992.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Johnny Nichols appeals his three-count drug conviction for knowingly and intentionally possessing cocaine and cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Although Nichols' appeals three separate grounds, the central element to all his claims is that the evidence used to convict him is insufficient. Nichols argues that but for evidentiary errors by the court he would not have been convicted. For the reasons stated below, we affirm the district court in this matter.
 
 
 2
 On May 10, 1989, based upon a tip from an informant, Memphis police executed a search warrant for Nichols' residence. Several days before the issuance of the warrant officers had supplied the informant with money, taken him to Nichols' apartment, watched him enter the apartment, and then watched him return to the detectives with a rock of "crack cocaine." The court found the information provided by the informant was reliable because the informant had assisted police in two prior drug cases unrelated to Nichols'.
 
 
 3
 When officers arrived at Nichols' apartment complex, they set up surveillance while waiting for assistance from other officers. Before back-up arrived, they observed Nichols come out of his apartment, enter his vehicle, and leave the complex. The informant had warned the officers that if Nichols left the apartment before the officers could search it, Nichols would be carrying drugs. The officers followed Nichols to a second apartment complex where they observed Nichols speaking briefly to two unknown persons and then crossing the street to a convenience store. By this time, other police officers had joined the original officers whereupon they proceeded to detain Nichols.
 
 
 4
 When the officers approached Nichols' car, they observed a plastic bag containing "crack cocaine" on the ground near where Nichols had exited his car. The officers saw a bag of cocaine powder lying just inside Nichols' car on the carpet and a loaded gun lying beside the arm rest near the driver's seat. The officers found $1,124 cash in Nichols' pocket.
 
 
 5
 A jury convicted Nichols on all three counts. He received a sentence of six and one-half years imprisonment for the cocaine counts and five years imprisonment to run consecutively on the firearm count. Nichols also received a four-year term of supervised release.
 
 
 6
 Nichols makes three arguments on appeal. First, Nichols claims the trial court erred in refusing to disclose the identity of the informant. Second, Nichols argues the court erred in allowing into evidence a detective's statement that he was at Nichols' residence pursuant to a search warrant and that the detective chose to follow Nichols rather than search the apartment based on an informant's tip. Third, Nichols argues the court erred in allowing evidence that the pistol found in his car was stolen.
 
 
 7
 Nichols' first argument on appeal is that the trial court abused its discretion when it refused to disclose the identity of the informer during the hearing on the motion to suppress evidence. As a related matter, Nichols argues that there was a Franks violation with regard to the issuance of the search warrant, given the erroneous basis for the issuance of the search warrant. At the motion to suppress hearing, Detective Swatzyna told the court that the government search warrant was issued in part because Swatzyna had witnessed the government informant purchasing drugs at Nichols' apartment five days prior to Nichols' arrest. Nichols contends, however, that he did not sell crack cocaine to the informant from his apartment within five days prior to his arrest and, therefore, the detective did not have reliable information on which to base a search warrant. Nichols argues that because the search warrant was invalid, all agents that followed the issuance of the search warrant were tainted.
 
 
 8
 We must first address whether the district court abused its discretion in refusing to disclose the informant's identity. It is within the trial court's discretionary powers to determine whether or not the government should disclose an informer's identity. United States v. Cummins, 912 F.2d 98, 103 (6th Cir.1990). Nichols argues under Rovario v. United States, 353 U.S. 53 (1957), that the trial court should have disclosed the informant's identity. Rovario, however, is not comparable to Nichols' case. The undisclosed witness was not a participant in the criminal activity with which Nichols was charged, nor the only material witness who could support the defendant's defense, as was the case in Rovario, 353 U.S. at 53.
 
 
 9
 Next, we must determine whether the search warrant was invalid under Franks v. Delaware, 438 U.S. 154, 171 (1978). Under Franks, a search warrant is invalidated if the defendant can make a substantial showing of deliberate falsehood or of reckless disregard for the truth on the part of the search warrant affiant in securing the search warrant. The trial court addressed the Franks issue and determined that Nichols offered no proof to warrant a finding that Swatzyna made any false statements or that he acted with reckless disregard for the truth. We agree. The trial court considered Nichols' claim that he had never sold drugs from his apartment within five days prior to his arrest but rejected Nichols' assertion in favor of Detective Swatzyna's version of events. Further, the court found that the detective's testimony that the informant had given information resulting in the seizure of drugs on at least two other occasions lent credibility to the informant's information and justified the government's reliance on the information regarding Nichols. The court concluded that because the detectives' actions were based on information obtained from a reliable informant, the detectives were warranted in making an investigatory stop of Nichols and then in conducting a warrantless search; thereafter, sufficient probable cause existed to arrest Nichols following the stop. See United States v. Ross, 456 U.S. 798 (1982) (officers acting on the information of an informant that describes individual selling narcotics kept in the trunk of his car could stop the individual's vehicle and conduct a warrantless search). We find that the trial court properly found that the informant was reliable and, therefore, that the police did not recklessly rely upon his information in issuing the search warrant.
 
 
 10
 Nichols' second argument on appeal is that the trial court erred in allowing Detective Swatzyna to testify about why he and Detective Hughes went to Nichols' apartment and, then, about why the detectives followed Nichols, when he emerged from the apartment, rather than executing the search warrant at that time. At trial, Swatzyna testified that he went to Nichols' apartment to execute a search warrant, based on an informant's tip, and then that he and Detective Hughes chose to follow Nichols when Nichols left his apartment because the informant had told detectives Nichols would carry drugs with him if he left. Apparently, the officers refrained from arresting Nichols when they first arrived at the apartment because they were waiting for sufficient backup to arrive. Nichols claims that this "hearsay" testimony by Swatzyna, derived from out-of-court statements of the confidential informant, is the only evidence linking Nichols to the drugs and gun for which he was convicted of possessing.*
 
 
 11
 The trial court admitted Swatzyna's testimony for the limited purpose of setting the scene. The standard of review of this matter is under the abuse of discretion standard. United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied, 488 U.S. 1031 (1989).
 
 
 12
 We are not persuaded by Nichols' argument. First, both of Detective Swatzyna's statements, while based on the informant's tip and therefore statements of an out-of-court declarant, are not hearsay because the statements were not offered to prove the truth of the matter asserted. Rather, both statements were offered to explain why the officers initially went to Nichols' apartment and then why the officers chose to follow Nichols' car rather than to search his apartment. This is classic "scene-setting" testimony that we have found in prior cases to be non-hearsay. See United States v. Pulley, 922 F.2d 1283, 1288 (6th Cir.), cert. denied, 112 S.Ct. 67 (1991); United States v. Martin, 897 F.2d 1368 (6th Cir.1990).
 
 
 13
 Admittedly, the relevance and probative value of so-called investigative background testimony can be low and the potential for abuse can be high. Martin, 897 F.2d at 1368. Consequently, the probative value of the testimony must be weighed against its prejudicial effect, under Fed.R.Evid. 403. See Martin, 897 F.2d at 1371. Here, neither of the contested statements goes "to the very heart of the prosecution's case." We find that the court did not abuse its discretion in admitting this testimony. Nichols is correct that the government's proof is circumstantial. Although drugs were found in his car and on the parking lot beside his car, and a gun was found in the car when he was arrested, none of these items bore any direct identification linking the items to Nichols. The officers did not examine the items for evidence of Nichols' fingerprints. Nonetheless, the natural inference is that these items belonged to Nichols given the sum total of the events leading up to and during his arrest. Circumstantial evidence, alone, can be sufficient grounds on which to convict a defendant. United States v. Jennings, 945 F.2d 129, 134 (6th Cir.1991) (citing United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). We find that the circumstantial evidence here was more than sufficient to support Nichols' conviction.
 
 
 14
 Nichols' final argument is that the court erred by allowing evidence that the pistol found in his car was stolen. At trial, the court admitted questioning by one of the government's witnesses who testified that the gun was stolen. Nichols argues that the fact the gun was stolen added nothing to the fact finding process and thus had no probative value. Nichols argues that the prejudicial impact of this evidence outweighed the probative value because there was no probative value. The government, however, argues that it was necessary to allow proof of the pistol's origin because of Nichols' counsel's opening statement. In the opening statement, Nichols' counsel pointedly argued that in order to convict Nichols, the government had to show that the pistol was Nichols'. Because the government had not submitted the pistol for any type of fingerprints, Nichols' counsel argued that the government would not be able to prove this essential element.
 
 
 15
 The trial court's allowance of this testimony does not constitute reversible error. It is not inconceivable that the trial court admitted this testimony because it construed the defendant's opening statement as calling into question the issue of the gun's ownership and that Nichols had opened the door to government testimony which indicated the gun was stolen. United States v. Ramos, 861 F.2d 461, 468-69 (6th Cir.1988), cert. denied 489 U.S. 1071 (1989). Furthermore, we note that even if this testimony constitutes error, the error was harmless. Even without the evidence about the theft of the gun, there was sufficient evidence linking the gun to Nichols. For example, Nichols' sister testified that she owned the Cadillac occupied by Nichols on the night he was arrested. She testified that at the time she loaned the car to Nichols there was no pistol in the car and she had never seen a pistol there before. Nichols does not deny that, at the time of his arrest, a gun was found beside him in the front seat of the car. The jury chose not to believe Nichols' testimony that the car was used by others prior to his arrest and that these other people might have placed the gun there. We therefore find that the district court did not err in admitting testimony as to the stolen gun's origins.
 
 
 16
 For the reasons described above, the judgment of the district court is affirmed.
 
 
 
 *
 Both the government and Nichols, in their briefs, suggest that the informant told officers Nichols would be carrying drugs and a gun if he left the apartment before officers could arrest him. Examination of the relevant transcript excerpts does not confirm that this is what Swatzyna testified to in court. Rather, Swatzyna's testimony only indicates that the informant told the officers Nichols would have drugs on his person if he left the apartment