NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0309n.06

Case No. 24-5835

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 20, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHRISTOPHER BOWMAN

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

OPINION

Before: THAPAR, READLER, and BLOOMEKATZ, Circuit Judges.

CHAD A. READLER, Circuit Judge. Christopher Bowman challenges the validity of two search warrants that led to his indictment on drug-trafficking charges. Bowman believes the warrants were fabricated after the searches concluded. The district court rejected this contention and denied Bowman a hearing on the matter. We now affirm.

I.

In late summer 2020, Kentucky law enforcement officials investigated Christopher Bowman for dealing and trafficking drugs. Using a confidential informant, the officers arranged for two audio- and video-recorded controlled buys. Each time, the informant purchased $800 worth of methamphetamine from Bowman at Bowman's residence. Officers also obtained a warrant authorizing installation of a tracking device on the Chevrolet Impala Bowman was driving. Through the device, officers learned of Bowman's travel patterns, very short stops in business

parking lots in late afternoon hours, which were "consistent with drug trafficking activity." R. 26-1, PageID 190.

Officers utilized this information to seek a search warrant for Bowman's residence. An officer signed the affidavit supporting the warrant request on August 27, 2020. Later that same day, a state court judge approved the warrant, at which point it was executed by officers. During their search, officers seized over a kilogram of cocaine, more than 100 grams of methamphetamine, two handguns, two cellphones, and $11,481 in cash. The officers obtained additional search warrants on August 31, this time to search the cellphones seized during the execution of the initial warrant. The warrants were executed on the same day.

Now, following each search, the operative warrant was returned to the county clerk for filing, at which point it was date stamped. Those stamps, however, reflected erroneous dates: the warrant for the residence bears a return stamp of September 3, 2019, and the warrants for the phones bear a return date stamp of September 2, 2019. But stamps on the affidavits supporting those warrants reflect that each affidavit was filed in September 2020.

A grand jury indicted Bowman on four federal drug-trafficking crimes. Bowman moved to dismiss the indictment and requested an evidentiary hearing, also known as a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the underlying warrant was falsified. The district court, however, found that Bowman failed to support his malfeasance allegations with any objective evidence, and thus failed to make the substantial preliminary showing necessary to merit a *Franks* hearing.

With the assistance of new counsel, Bowman filed a renewed motion for an evidentiary hearing, asking the district court to reconsider its earlier decision denying him a hearing. This time, Bowman added new factual allegations and identified several allegedly false statements in

the affidavits. The government opposed Bowman's request. The reviewing magistrate judge agreed with the government and denied Bowman's motion. Bowman did not object, and the district court adopted the report in full. Bowman eventually pleaded guilty, reserving his right to appeal the issues tied to the search warrants.

## II.

A. We begin with Bowman's main argument on appeal—that the district court wrongly denied him an opportunity to challenge the validity of the search warrants under *Franks*. We review the district court's findings of fact on this front for clear error and its conclusions of law de novo. *See United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

To obtain a *Franks* hearing, Bowman must clear a high bar. *See United States v. Sanders*, 106 F.4th 455, 470–71 (6th Cir. 2024) (en banc). An affidavit in support of a search warrant starts with a "presumption of validity." *Franks*, 438 U.S. at 171. Overcoming this presumption requires Bowman to make a "substantial preliminary showing" that an officer "knowingly and intentionally, or with reckless disregard for the truth," included a "false statement" that was "necessary to the finding of probable cause" "in the warrant affidavit." *Id.* at 155–56. In challenging the veracity of statements in the affidavit, Bowman needs more than "conclusory" allegations. *Sanders*, 106 F.4th at 471. Rather, he must "point to specific false statements," demonstrated through "an [accompanying] offer of proof." *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (emphasis omitted) (quoting *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990)).

We see no error in the district court's conclusion that Bowman failed to make the required "preliminary showing." *United States v. Poulsen*, 655 F.3d 492, 505 (6th Cir. 2011). Start with Bowman's assertion that he is entitled to a *Franks* hearing because no warrant existed at the time

3

of the search. The district court found that the search warrants for Bowman's home and cell phone were signed in late August 2020. The warrants were later returned to the court clerk on either September 2 or September 3, 2020, following the operative searches. True, when the clerk filed the returned warrants, the stamps placed upon them reflected dates in September 2019, about a year before the search. The district court, however, found that these stamps were simply clerical errors and rejected Bowman's request for a hearing.

We likewise see no clear error in the district's courts findings that the warrants lacked any evidence of fraud. To accept Bowman's theory, one would need to find collusion between the investigating officers, the state court judge, and the county deputy clerk, a conspiracy that would include fabricating search warrants after the search and then ante-dating the warrants to cover their tracks. This theory is pure conjecture. Indeed, Bowman relies "only [on] speculation that th[ese] date[s] w[ere] intentionally or recklessly wrong." *United States v. Stone*, 676 F. App'x 469, 475 (6th Cir. 2017). Understandably, that "is not enough to make a substantial preliminary showing of knowing or reckless falsity." *Id.*; *cf. United States v. Frazier*, 423 F.3d 526, 539 (6th Cir. 2005) ("A defendant cannot demonstrate entitlement to a *Franks* hearing by merely identifying typographical errors in the affidavit.").

Along these same lines, Bowman claims that the warrants' and affidavits' return on September 2 and 3—days after they were executed—is further evidence of their after-the-fact fabrication. As a factual matter, Bowman's claim, here again, is pure speculation. And as a legal matter, Bowman has not shown that filing a search warrant a few days after its execution raises constitutional concerns. *See United States v. Dixon*, No. 21-6001, 2022 WL 2715702, at *2 (6th Cir. July 13, 2022) (holding there was no constitutional violation when a search warrant was filed after execution and noting that to hold otherwise would "run[] counter to logic" and "would

4

necessarily inhibit the [g]overnment's ability to act quickly to prevent the potential destruction of evidence"). And finally, as a practical matter, the government simply cannot immediately file all executed warrants as warrants are not executed only "during business hours." *Id.*

Bowman next attempts to resurrect two points he made in district court—that an unsigned version of the warrant was initially turned over in discovery, and that at the time of the initial search, his wife was not given a physical copy of the warrant. But he does so largely by referencing his earlier filings in district court, rather than setting out in detail the arguments he purports to pursue. Merely incorporating an argument by reference to district court pleadings violates the Federal Rules of Appellate Procedure, which it bears reminding, require an appellant to flesh out in his brief the grounds for reversal. *See, e.g.*, *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) (holding that incorporation by reference violates Federal Rule of Appellate Procedure 28(a)(9) which "instruct[s] that a component of the brief is 'the argument, which must contain . . . [the] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies'" (alterations in original) (emphasis omitted)). Bowman has thus forfeited these arguments on appeal. *Island Creek Coal Co. v. Maynard ex rel. Maynard*, 87 F.4th 802, 815–16 (6th Cir. 2023). And even were we to set this preservation issue aside, the district court did not clearly err by finding that the evidence did not support Bowman's claims.

Bowman also raises here issues asserted in his renewed motion for a *Franks* hearing in the district court, which he says reinforce the notion that he was the subject of an illicit conspiracy. He runs into a procedural hurdle from the start, however, as he did not object to the magistrate judge's report and recommendation denying his renewed motion. Arguments not raised with the district court as objections to a magistrate judge's report and recommendation are forfeited, *see*

*Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019), meaning we review this issue on appeal, if at all, for plain error, *see Sullivan v. United States*, 587 F. App'x 935, 942–43 (6th Cir. 2014). To try to meet that high standard, Bowman highlights an assortment of facts, including an incorrect date on his state bond order, the court clerk's office's failure to produce the search warrants upon request, the felony case number placed upon the warrant affidavits, and the government's use of evidence from the wrong county clerk in defending the warrants. Even assuming the truth of each allegation, these facts are only tangentially related to the validity of the warrants. And none show that either affidavit plainly contained a false statement. *See Cummins*, 912 F.2d at 103.

Bowman fares no better in his specific challenge to the affidavit supporting the warrant for his home. Bowman says that the affidavit omitted material information about the controlled purchases. On this issue, Bowman's *Franks* claim faces an even "higher bar" than he does elsewhere in alleging a "false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). He fails to clear that bar. Perhaps, as Bowman suggests, the affidavit lacks descriptive detail about whether Bowman was in physical possession of the drugs or accepted the money for the sale. But the affidavit still states that "[t]he confidential source . . . purchased approximately 1 ounce of crystal methamphetamine" from Bowman, who was "seen inside the residence with the confidential source" during the buy. R. 26-1, PageID 188–190. In short, the affidavit establishes that the sale occurred, a core fact Bowman does not seem to contest. And the purported omissions do not undermine the probable cause justifying the warrant. *Franks*, 438 U.S. at 155–56.

Bowman's remaining allegations also fail. Bowman asserts that the affidavit supporting the home-based warrant falsely claimed that Bowman owned the GPS-monitored vehicle. In truth, the affidavit states only that Bowman "operated" the car, not that he owned it. R. 50-7, PageID

368.  Bowman similarly lacks factual support for his allegation that the affidavit falsely described anonymous tips about his drug sales.  Here, Bowman contends that the discovery he received did not confirm the veracity of this paragraph.  But Bowman's burden is far higher:  he must show that the statement at issue was made as a "deliberate falsehood" or with "reckless disregard for the truth."  *Franks*, 438 U.S. at 171.  He has not done so.

Finally, Bowman claims that officers lied about their three-year investigative efforts and, further, that the warrant used to obtain GPS tracking of his vehicle contained false statements.  Like Bowman's other arguments, these claims are not substantiated by the record.  *See United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007).

B.  Bowman makes one last argument:  that his original trial counsel was ineffective in moving for a *Franks* hearing in district court.  The better posture in which to make that argument, however, is in a collateral proceeding under 28 U.S.C. § 2255.  We "general[ly]" do not allow a defendant to "raise ineffective assistance of counsel claims for the first time on direct appeal."  *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)).  Especially so where, as here, "the record is" not "adequately developed to allow this Court to assess the merits of the issue," *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000), for example, by providing "information about why" Bowman's lawyer "chose to take the actions [he] took," *United States v. Williams*, 753 F.3d 626, 637 (6th Cir. 2014).  Accordingly, we do not reach the issue.

\*       \*       \*       \*       \*

We affirm.

7